*1349 BARKETT, Circuit Judge,
specially concurring:
I join the majority in affirming Faust’s conviction, but concur in its sentencing decision only because I am bound by Circuit precedent. Although United States v. Duncan, 400 F.3d 1297 (11th. Cir.), cert. denied, — U.S. -, 126 S.Ct. 432, 163 L.Ed.2d 329 (2005), expressly authorized the district court to enhance Faust’s sentence for conduct of which a jury found him innocent, I strongly believe this precedent is incorrect, and that sentence enhancements based on acquitted conduct are unconstitutional under the Sixth Amendment, as well as the Due Process Clause of the Fifth Amendment.
The Sixth Amendment right to a jury trial is endangered whenever a judge imposes a sentence that is not based solely on “facts reflected in the jury verdict or admitted by the defendant.” Blakely v. Washington, 542 U.S. 296, 301, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004). In the present case, Faust exercised his Sixth Amendment right and a jury of his peers returned an acquittal as to three of four charges in the indictment: possession of ecstacy, possession of a firearm by a convicted felon, and possession of a firearm during a drug trafficking offense. This verdict necessarily reflected the jury’s specific determination that Faust was not guilty of these statutorily defined crimes beyond a reasonable doubt. Nonetheless, the district court increased his prison term because the judge, and the judge alone, determined that Faust was guilty of them by a mere preponderance of the evidence.
The majority contends that sentence enhancements based on acquitted conduct are directly sanctioned by United States v. Watts, 519 U.S. 148, 117 S.Ct. 633, 136 L.Ed.2d 554 (1997). But in United States v. Booker, 543 U.S. 220, 224, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005), the Supreme Court distinguished Watts on the same, readily apparent ground that distinguishes Watts from the present case: “[i]n Watts, relying on Witte v. United States, 515 U.S. 389, 115 S.Ct. 2199, 132 L.Ed.2d 351 (1995), we held that the Double Jeopardy Clause permitted a court to consider acquitted conduct in sentencing a defendant under the Guidelines. In neither Witte nor Watts was there any contention that the sentencing enhancement had exceeded the sentence authorized by the jury in violation of the Sixth Amendment.” Booker, 543 U.S. at 240, 125 S.Ct. 738 (emphasis added). Because Faust brings a claim under the Sixth Amendment, not under the Double Jeopardy Clause, “the issue we confront today” — relating to the scope of a defendant’s jury-trial right — “simply was not presented” in Watts, which posed “a very narrow question regarding the interaction of the Guidelines with the Double Jeopardy Clause.” Id. at 240, 240 n. 4, 125 S.Ct. 738.
Thus the holding of Watts, explicitly disavowed by the Supreme Court as a matter of Sixth Amendment law, has no bearing on this case in light of the Court’s more recent and relevant rulings in Apprendi v. New Jersey, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), Ring v. Arizona, 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002), Blakely, and Booker. The impact of these decisions on the present case is hardly obviated by the fact that Booker declined to graft onto the Sentencing Act a requirement that juries find all facts considered in sentencing beyond a reasonable doubt, and declined to excise provisions of the Act providing for judicial fact-finding as part of sentencing. Though true so far as it goes, this observation, standing alone, hardly dictates the propriety of Faust’s sentence enhancement for acquitted conduct.
*1350 There is a vital constitutional difference between sentencing a defendant for 100 grams of cocaine where he was convicted of possessing 50 grams, and punishing a defendant for 90 grams of ecstacy where the jury refused to convict him of possessing even a milligram of that substance. As the Ninth Circuit warned fifteen years ago, it “pervert[s] our system of justice [to] allow[ ] a defendant to suffer punishment for a criminal charge for which he or she was acquitted.” United States v. Brady, 928 F.2d 844, 851 (9th Cir.1991). The survival of this principle to the present day was explained particularly forcefully in United States v. Pimental, 367 F.Supp.2d 143 (D.Mass.2005). Although Pimental did not involve a drug conviction, the question in that case was no different from the one presented here and in Duncan—namely, whether a judge may constitutionally base a sentence on “the very same conduct that [a] jury considered” and declined to impute to the defendant. Id. at 145. There the court reasoned that “it makes absolutely no sense to conclude that the Sixth Amendment is violated whenever facts essential to sentencing have been determined by a judge rather than a jury, ... and also conclude that the fruits of the jury’s efforts can be ignored with impunity by the judge in sentencing.” Id. at 150 (citing Blakely, 542 U.S. 296, 124 S.Ct. 2531). For it is not the abstract dignity of the statutory maximum that is at stake in the Supreme Court’s Sixth Amendment ju-rispradence, but the integrity of the jury right itself, the cornerstone of our criminal justice system. See Booker, 543 U.S. at 236, 125 S.Ct. 738 (decrying how, as sentences became less tethered to actual verdicts, “jur[ies] finding[s] of the underlying crime became less significant”).
Insisting that its decisions in Jones, Apprendi, and Booker are not “motivated by Sixth Amendment formalism, but by the need to preserve Sixth Amendment substance,” id. at 237, 125 S.Ct. 738, the Supreme Court has consistently returned to the bedrock principle that criminal sentences must be “authorized” by “the jury verdict alone.” See Booker, 543 U.S. at 235, 125 S.Ct. 738; Blakely, 542 U.S. at 305, 124 S.Ct. 2531; Ring, 536 U.S. at 604, 122 S.Ct. 2428. There are at least two reasons why “Sixth Amendment substance” is violently eroded when our notion of a sentence “authorized by the jury verdict” is limited to punishments which merely stay within the statutory maximum for the crime of conviction. First, the reasonable doubt standard is warranted when imputations of criminal conduct are at stake not only “because of the possibility that [an individual] may lose his liberty upon conviction,” but also “because of the certainty that he would be stigmatized .... ” See In re Winship, 397 U.S. 358, 363, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970) (emphasis added); see also McMillan, 477 U.S. at 96, 106 S.Ct. 2411 (“Once a State defines a criminal offense, the Due Process Clause requires it to prove any component of the prohibited transaction that gives rise to both a special stigma and a special punishment beyond a reasonable doubt.”). Even though Faust’s maximum possible sentence was not increased by the sentencing judge’s independent findings — three separate findings of actual, criminal conduct — they certainly do change the quantity and quality of the stigma he faces. Second, and even more importantly, “to consider acquitted conduct trivializes ‘legal guilt’ or ‘legal innocence’ — which is what a jury decides — in a way that is inconsistent with the tenor of the recent case law,” Pimental, 367 F.Supp.2d at 152, by “reducing the jury’s role ‘to the relative importance of a low-level gatekeeper.’ ” Booker, 543 U.S. at 230, 125 S.Ct. 738, citing Jones v. United States, 526 U.S. 227, 230, 119 S.Ct. 1215, 143 L.Ed.2d 311 *1351 (1999). In sentencing on the basis of acquitted conduct, a court “is expressly considering facts that the jury verdict not only failed to authorize; it considers facts of which the jury expressly disapproved." Pimental, 367 F.Supp.2d at 152 (emphasis added).
The majority believes that, in a single proceeding, Faust’s possession of ecstacy may be both an element of a crime and a sentencing fact provable by a mere preponderance of the evidence. This anomaly is hardly justified by the argument that “the jury ‘only’ decides guilt beyond a reasonable doubt while the judge decides facts by a fair preponderance of the evidence.” Id. That argument might be more compelling if Booker had indeed returned us to the pre-Guidelines era, when “the trial sphere was rule-bound and sentencing was comparatively rule-less.” Id. Before the Guidelines, “what the judge did in sentencing — a specialized, professional function — was totally different from what the jury did.” Id. The Sixth Amendment implications were very different then, “because sentencing facts did not have binding and determinate consequences.” Id. at 151. See also, United States v. Restrepo, 946 F.2d 654, 663 (9th Cir.1991) (Norris, J., dissenting) (positing that the Sentencing Guidelines gave the defendant “a constitutionally-protected interest in a sentence less than the statutory maximum. This liberty interest, created by the mandatory language of the Sentencing Guidelines, is protected by the due process clause.”).[1] But far from returning us to the pre-Guidelines days when judges “ex-ercis[ed] something like a clinical judgment about the appropriate sentence,” Booker introduced a “hybrid” system in which sentencing “is still profoundly influenced by the rules, namely the Guidelines.” Pimental, 367 F.Supp.2d at 151, 152. Thus, like the Court in Booker itself, we are “faced with the issue of preserving an ancient guarantee under a new,” rather than age-old and familiar, “set of circumstances.” Booker, 543 U.S. at 237, 125 S.Ct. 738. The fair preponderance standard, which “made sense” under the regime of indeterminate sentencing, simply “does not make sense in this hybrid regime where rules still matter, and certain facts have important, if not dispositive, consequences.” Pimental, 367 F.Supp.2d at 153. See also Restrepo, 946 F.2d at 670 (Norris, J., dissenting) (“Central to any liberty interest analysis is the extent to which governmental discretion to take away liberty has been cabined.”).
More fundamentally still, I believe Faust’s sentence enhancements are unconstitutional precisely because they derive from findings based on a preponderance of the evidence. Of course I am aware that McMillan v. Pennsylvania, 477 U.S. 79, 106 S.Ct. 2411, 91 L.Ed.2d 67 (1986), held that a preponderance standard at sentencing satisfies due process, even with regard to conduct that in itself constitutes a criminal offense under applicable law.[2] But “as *1352 a matter of simple justice,” Booker, 543 U.S. at 230, 125 S.Ct. 738, factual findings by a sentencing judge ought to reflect the moral blameworthiness of an already culpable defendant. Rather than punishing an offender for his guilt or innocence per se, judicially imposed enhancements historically relate to contextual matters like “the vulnerability of the victim, the status of the victim, the defendant’s role in the offense,” or even the quantity of drugs in the defendant’s possession. United States v. Grier, 449 F.3d 558, 583 (Sloviter, J., dissenting). If these “contextual” questions can or should be resolved by a sentencing judge under a preponderance standard, that is because our criminal justice system deviates from its preference for the highest standard of proof only when it comes to facts that do not — and could not — go to the basic question of legal culpability, traditionally a jury’s responsibility. When a sentencing judge finds facts that could, in themselves, constitute entirely free-standing offenses under the applicable law— that is, when an enhancement factor could have been named in the indictment as a complete criminal charge — the Due Process Clause of the Fifth Amendment requires that those facts be proved beyond a reasonable doubt. See Winship, 397 U.S. at 364, 90 S.Ct. 1068 (1970) (“[T]he Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged .... It is critical that ... every individual going about his ordinary affairs have confidence that his government cannot adjudge him guilty of a criminal offense without convincing a proper factfinder of his guilt with utmost certainty.”); see also Restrepo, 946 F.2d at 678 (Norris, J., dissenting) (asserting that the reasonable doubt standard is required for “an enhancement based on sentencing findings that appellant engaged in two additional sales of cocaine which were not charged in the indictment[, because tjhese additional sales constitute elements of a separate crime, not traditional sentencing factors”).
The conduct that served as the basis for Faust’s challenged sentence enhancements clearly did not relate to “traditional” sentencing factors. Apprendi, 530 U.S. at 493-94, 120 S.Ct. 2348. They constituted wholly separate criminal charges, and their appearance as such in the indictment leads me to the last of my constitutional objections to today’s opinion — namely, that sentencing on the basis of acquitted conduct not only violates the Due Process Clause’s specific guarantee of proof beyond a reasonable doubt, but also other aspects of “the requirement of fundamental fairness” embodied in the constitutional right to due process of law. Winship, 397 U.S. at 369, 90 S.Ct. 1068 (Harlan, J., concurring). In a case such as this, the specific demands of fundamental fairness are “contextual, taking into account ... the practicalities of the criminal justice system.” Richardson v. United States, 526 U.S. 813, 835, 119 S.Ct. 1707, 143 L.Ed.2d 985 (1999).
*1353 The sentencing practice that Faust challenges does more than offer the government a second, if smaller, bite at the apple in criminal prosecutions. And it does more, even, than undermine the “particular significance” that law and society attach to an acquittal. See United States v. DiFrancesco, 449 U.S. 117, 129, 101 S.Ct. 426, 66 L.Ed.2d 328 (1980). When one looks to “the practicalities of the criminal justice system,” it becomes apparent that the most pernicious effect of sentencing on the basis of acquitted conduct, and the one that most insidiously “violates those fundamental conceptions of justice which ... define the community’s sense of fair play and decency,” Dowling v. United States, 493 U.S. 342, 353, 110 S.Ct. 668, 107 L.Ed.2d 708 (1990), is its implicit and often hopeless demand that, in order to avoid punishment for charged conduct, criminal defendants must prove their innocence under two drastically different standards at once. See Winship, 397 U.S. at 367, 90 S.Ct. 1068 (emphasizing the practical “difference between the reasonable-doubt and preponderance standards”). Calling on a defendant to convince a jury of his innocence beyond a reasonable doubt, even as he must constantly account for the court’s ability to sentence him under a preponderance standard, exacerbates the very disparities which the reasonable doubt standard has been employed to correct. See, e.g., Santosky v. Kramer, 455 U.S. 745, 762-64, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982) (disparity in litigation resources renders preponderance standard constitutionally inadequate in proceedings terminating parental rights).[3]
“There is always in litigation a margin of error, representing error in factfinding, which both parties must take into account,” especially in the formulation of trial strategy. Winship, 397 U.S. at 364, 90 S.Ct. 1068 (citing Speiser v. Randall, 357 U.S. 513, 525, 78 S.Ct. 1332, 2 L.Ed.2d 1460 (1958)). Our Circuit’s Duncan rule severely compromises defendants’ ability to properly account for this margin of error, tailor an optimal trial strategy, or indeed formulate any minimally satisfying strategy whatsoever. Faced with multiple allegations supported by evidence of varying persuasiveness, Faust’s largely successful effort to escape guilt beyond a reasonable doubt could not preclude, and, in its success, actually might have contributed to, his punishment for those acquitted offenses under a lesser standard of proof. I do not believe the Constitution permits this cruel and perverse result.

. It is important to note that “mandatoryness” is a question of degree, and that even the pre-Booker Sentencing Guidelines gave judges some discretion to depart from the mandated punishment range if they found certain aggravating or mitigating circumstances.

. I address my disagreement with McMillan primarily in order to distinguish the due process claim rejected by the Supreme Court in that case from the very different and particular due process problem, discussed infra, that arises when a defendant is sentenced on the basis of charges of which he has actually been acquitted. I note, however, the view that McMillan’s own logic is significantly undercut by the Court’s more recent decisions in Apprendi, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000) and Jones, 526 U.S. 227, 119 S.Ct. 1215, 143 L.Ed.2d 311 (1999). See United States v. Grier, 449 F.3d 558, 581 (Slo- *1352 viter, J., dissenting) (“The holding of Jones that due process protections are required for offense-defining elements as distinguished from sentencing factors was the precedent on which the Supreme Court’s decision in Ap-prendi was based .... Apprendi’s sentence was vacated because the sentencing judge in that case found facts that constitute a separate crime by a preponderance of the evidence and that finding increased the statutory maximum to which the defendant was exposed. [Because Grier’s Guidelines range was increased on the basis of similarly offense-defining facts, his] situation is thus comparable to Apprendi’s ... I dissent from the holding that the District Court may enhance Grier's sentence based on its determination by a preponderance of the evidence, that Grier committed an aggravated assault that was not admitted nor submitted to a jury for determination by proof beyond a reasonable doubt.’’).

. "[T]he government's ability to make its case vastly exceeds a defendant's ability to rebut it. The financial resources of the prosecution and the ability of prosecutors to access police, informants, and experts usually are much greater than those of defendants' counsel____ [Pjresentence reports often rely excessively on the prosecutor’s files for their information ... and hearsay evidence [there]in ... or from confidential informants is difficult and costly to rebut. The absence of equal litigation resources thus makes the preponderance of evidence standard generate even more errors— errors that fall primarily on the side of deprivations of liberty for individuals.” Restrepo, 946 F.2d at 675 (Norris, J., dissenting).